**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 29 2011

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) |
| Plaintiff, | ) ) CIVIL ACTION NO. 3:11CV00196-JLH |
| v. | ) ) COMPLAINT ) |
| AT&T d/b/a SOUTHWESTERN BELL TELEPHONE COMPANY | ) ) JURY TRIAL DEMAND |
| Defendant. | ) ) |

This case assigned to District Judge Holmes
and to Magistrate Judge Kearney

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the bases of race, sex, and retaliation and to provide appropriate relief to Antonnett Johnson who was adversely affected by such practices. As alleged with greater particularity in paragraphs 7, 9, and 11 below, the Equal Employment Opportunity Commission alleges that AT&T d/b/a/ Southwestern Bell Telephone Company discharged Johnson based on her race, sex, and in retaliation for her complaints about discrimination.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§451, 1331, 1337, 1343, and 1345. This is an action authorized and instituted pursuant to §706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §.1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Eastern District of Arkansas, Jonesboro Division.

PARTIES

3. Plaintiff, Equal Employment Opportunity Commission (the "Commission"), is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by §706(f)(1) and (3) of Title VII, 42 U.S.C. §2000-5(f).

4. At all times, Defendant ("Defendant Employer"), AT&T d/b/a/ Southwestern Bell Telephone Company has continuously been doing business in the State of Arkansas and the City of Jonesboro, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant Employer has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of §701(b), (g), and (h) of Title VII, 42 U.S.C. §§2000e(b), (g), and (h).

STATEMENT OF CLAIMS

6. More than thirty (30) days prior to the institution of this lawsuit, Antonnett Johnson filed a charge with the Commission alleging violations of Title VII by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Since at least April 10, 2009, Defendant Employer engaged in unlawful employment practices at its facility in Jonesboro, Arkansas in violation of §703(a) of Title VII, as amended, 42 U.S.C. §§ 2000e-2(a) and the Civil Rights Act of 1991. The unlawful employment practices include Defendant Employer discharging Johnson based on her race, black.

    a. Defendant Employer is a telecommunications company providing a broad array of telecommunication services, wireless communications, and other products.

  b. Defendant Employer hired Johnson into a network service installation and maintenance position on September 8, 2002.

  c. In September 2007, she transferred to a customer service technician job. Chris Pillow supervised her upon her transfer to her new position.

  d. Johnson covered the Jonesboro territory. She also worked at sites in Harrisburg and Paragould.

  e. Her job duties included, among other things, performing maintenance operations on pole lines, servicing telephone equipment and locating and correcting faults in such equipment.

  f. Johnson's overall performance reviews met expectations in 2006, 2007, and 2008.

  g. On March 20, 2009, Johnson told Ryan Mouser, one of the supervisors, to expect a customer complaint.

  h. Shortly thereafter, Mouser received the complaint from the customer regarding a comment Johnson made to the customer.

  i. On April 10, 2009, Defendant Employer summoned Johnson to a meeting regarding the complaint.

  j. Kirk Proffer, third line manager, Rick Seawel, second line manager, and Ryan Mouser, first line supervisor, attended the meeting.

  k. During the conference, Johnson, the only black employee, complained about co-workers subjecting her to race discrimination. She stated that a white co-worker told her that she should work in the black area because she could understand the language. She said

that another time a white co-worker referred to a nearby lake as "the place where they throw the black people."

   l. Johnson also said that some customers called her "nigger" and she feared going to Harrisburg and Paragould because of racial incidents and the allegation from co-workers that the Klu Klux Klan was in those areas.

   m. Defendant Employer did not take any formal action to investigate Johnson's complaints.

   n. On April 16, 2009, Defendant Employer required Johnson to enter into a last chance agreement as a result of her behavior toward the customer.

   o. Then, Defendant Employer began conducting numerous disciplinary discussions with Johnson on various alleged performance issues.

   p. In July 2009, Mouser became Johnson's supervisor.

   q. On July 21, 2009, Johnson sent an e-mail to Mouser stating again that she felt "unsafe' in Harrisburg.

   r. On November 5, 2009, Johnson made a stop to cash her paycheck while in route to her first assignment at a customer's home, as allowed by company policy.

   s. When the bank would not honor her paycheck, she asked Mouser for permission to go out of her route before servicing her first customer to cash her paycheck.

   t. Mouser approved Johnson's deviation from her route to cash her paycheck.

   u. On November 6, 2009, Defendant Employer suspended Johnson for going out of route to cash her check.

  v.  On November 18, 2009 Defendant Employer summoned Johnson to a meeting to explain her version of the events.

  w.  On December 1, 2009, Defendant Employer discharged Johnson for deviating from her assigned route without approval.

  x.  Defendant Employer treated Darren Woodson, a similarly situated white employee, more favorably than Johnson. Defendant Employer did not discharge Woodson when he deviated from his route.

8.  The effect of the practices complained of in paragraphs 7 above has been to deprive Johnson of equal employment opportunities and otherwise adversely affect her employment because of her race.

9.  Since at least April 10, 2009, Defendant Employer engaged in unlawful employment practices at its facility in Jonesboro, Arkansas in violation of §703(a) of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 2000e-2(a) and the Civil Rights Act of 1991. The unlawful employment practices include Defendant Employer discharging Johnson based on her sex, female.

  a.  Defendant Employer hired Johnson into a network service installation and maintenance position on September 8, 2002.

  b.  In September 2007, she transferred to a customer service technician job.

  c.  Johnson covered the Jonesboro territory. She also worked at sites in Harrisburg and Paragould.

  d.  Her job duties included, among other things, performing maintenance operations on pole lines, servicing telephone equipment, and locating and correcting faults in

such equipment. She worked in that position until her discharge.

   e. Johnson's overall performance reviews met expectations in 2006, 2007, and 2008.

   f. On November 5, 2009, Johnson made a stop to cash her paycheck while in route to her first assignment at a customer's home, as allowed by company policy.

   g. When the bank would not honor her paycheck, she asked Mouser for permission to go out of her route before servicing her first customer to cash her paycheck at another bank.

   h. Mouser approved Johnson's deviation from her route to cash her paycheck.

   i. On November 6, 2009, Defendant Employer suspended Johnson for going out of route to cash her check.

   j. On November 18, 2009, Defendant Employer summoned Johnson to a meeting to explain her version of the events.

   k. On December 1, 2009, Defendant Employer terminated Johnson for deviating from her assigned route without approval.

   l. Defendant Employer treated Darren Woodson, a similarly situated male employee, more favorably than Johnson. Defendant Employer did not discharge Woodson for deviating from his route.

  10. The effect of the practices complained of in paragraphs 9 a-m above has been to deprive Antonnett Johnson of equal employment opportunities and otherwise adversely affect her employment because of her sex.

11.     Since at least April 10, 2009, Defendant Employer has engaged in unlawful employment practices at its Jonesboro, Arkansas facility in violation of Section 704 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) and Title I of the Civil Rights Act of 1991.  The unlawful employment practices include retaliating against Antonnett Johnson because she engaged in protected activity.

    a.      Defendant Employer hired Johnson as a network service installer in September 2002.  Johnson transferred to the customer service technician job in September 2007.

    b       Her job duties included servicing telephone equipment and associated wiring.  From 2006 to 2008, Johnson received evaluations of overall meets expectations.

    c.      On March 20, 2009, Defendant Employer received a customer complaint regarding Johnson.

    d.      During an April 10, 2009 meeting to discuss the customer complaint regarding vulgar language used by the customer and Johnson response, she voiced her concerns regarding customers calling her "nigger" and taunting her with the possibility of the Klu Klux Klan existing in the Harrisburg area.  She also told Defendant Employer about co-workers' discriminatory remarks, including telling her to work in the black area or making a "joke" about throwing blacks into a nearby river.  Kirk Proffer, Rick Seawel, and Ryan Mouser attended the meeting.

    e.      Defendant Employer's policy outlines the steps for managers to take when reports of discrimination are lodged, but the managers did not initiate a formal investigation.

    f.      On April 16, 2009, Defendant Employer required Johnson to enter into a last chance agreement.

      g.      From around May 27, 2009 to September 2009, Defendant Employer held seven disciplinary discussions with Johnson.

      h.      On July 23, 2009, Johnson sent an email to Mouser again stating that she feared working in Harrisburg, although she did not refuse to work there.

      i.      Mouser did not respond to Johnsons e-mail or investigate Johnson's concerns, as required by the company EEO policy.

      j.      On November 5, 2009, Johnson went to the bank to cash her paycheck on her way to her first customer. Defendant Employer's policy allowed a brief stop as long as the employee did not deviate from the assigned route.

      k.      Johnson contacted the customer and learned he would return home in 30 to 45 minutes.

      l.      Johnson called Mouser to give him the status of the job and to request approval to go out of route to another bank because the first bank did not honor her paycheck.

      m.      After conversations with Mouser, he gave her approval to go to another bank. When she had trouble at the second bank, she proceeded to her first assigned job.

      n.      On November 6, 2009, Defendant Employer suspended Johnson for driving out of route.

      o.      On November 18, 2009, Defendant Employer held a "Day in Court" meeting to allow Johnson to defend her reason for deviating from her assigned route. Proffer, Seawel, and Mouser attended the conference along with union representatives.

      p.      Proffer conducted the questioning at the meeting.

      q.      Defendant Employer discharged Johnson on December 1, 2009, for

driving out of route. Defendant Employer did not initiate a formal investigation

        r.      Defendant Employer's decision to discharge Johnson involved Seawel, Mouser, and Proffer.

        s.      Woodson, Johnson's comparator, had multiple performance issues, including performance improvement plans and last chance agreements. Woodson drove out of route, but Defendant Employer did not consider his deviation from the route a terminable offense.

      12.    The effect of the practices complained of in paragraphs 11 a-s has been to deprive Antonnett Johnson of equal employment opportunities and otherwise adversely affect her status as an employee because she engaged in protected activity by complaining about unequal terms and conditions of employment.

      13.    The effect of the practices complained of in paragraphs 7, 9, and 11 above has been to deprive Antonnett Johnson of equal employment opportunities and otherwise adversely affect her status as an employee.

      14.    The unlawful employment practices complained of in paragraphs 7, 9, and 11 above were intentional.

      15.    The unlawful employment practices complained of in paragraphs 7, 9, and 11 above were done with malice or with reckless indifference to the federally protected rights of Antonnett Johnson.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

      A.    Grant a permanent injunction enjoining Defendant Employer and its officers,

successors, assigns, and all persons in active concert or participation with it, from engaging in acts of sex, race and retaliation.

B.   Order Defendant Employer to institute and carry out policies, practices and programs which provide equal employment opportunities for women and African Americans and which eradicate the effects of unlawful employment practices.

C.   Order Defendant Employer to make whole Antonnett Johnson by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including reinstatement and/or front pay for Antonnett Johnson.

D.   Order Defendant Employer to make whole Antonnett Johnson by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 7, 9, and 11 above, including but not limited to expenses for relocation, job search, medical expenses not covered by employee benefit plans, as well as other out of pocket expenses, in amounts to be determined at trial.

E.   Order Defendant Employer to make whole Antonnett Johnson by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 7, 9, and 11 above, including but not limited to emotional distress, pain, suffering, embarrassment, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.   Order Defendant Employer to pay Antonnett Johnson punitive damages for its malicious and/or reckless conduct described in paragraphs 7, 9, and 11 above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully Submitted

**P. DAVID LOPEZ**
General Counsel

**JAMES LEE**
Deputy General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

**FAYE A. WILLIAMS**
Regional Attorney
Tennessee Bar No. 011730

**JOSEPH CROUT**
Supervisory Trial Attorney
Tennessee Bar No. 012957

**DEIDRE SMITH**
Senior Trial Attorney
Tennessee Bar No. 018499

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
1407 Union Avenue, Suite 901
Memphis, TN 38104
(901) 544-0140